UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE JAMES PICKERING,

         Plaintiff,                             19-CV-417

     v.

U.S DEPARTMENT OF JUSTICE and
U.S DEPARTMENT OF HOMELAND SECURITY

         Defendant.

---

## MEMORANDUM OF LAW

## INTRODUCTION

This Memorandum of Law is submitted for defendant United States Department of Justice ("DOJ"), on behalf of its component agency, the Federal Bureau of Investigation ("FBI"), in support of its motion for summary judgment, pursuant to Fed. R. Civ. P. 56. This case concerns a request made by plaintiff to FBI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## SUMMARY OF FACTS

The Court is respectfully referred to the accompanying declaration of Michael G. Seidel for a complete and full recitation of the facts relevant to this motion.

## ARGUMENT

### Standard of Review

Under FOIA, "every federal agency is required . . . to make its records 'promptly available to any person' upon receipt of a reasonably articulated request." Kuzma v. U.S. Dep't of Justice, No. 12-CV-807S, 2014 WL 4829315, at *2 (W.D.N.Y. Sept. 29, 2014)

(quoting Phillips v. Immigration & Customs Enforcement, 385 F. Supp. 2d 296, 301 (S.D.N.Y. 2005) and 5 U.S.C. § 552(a)(3)).  "The FOIA embodies Congress's desire that an open government allow for 'an informed citizenry to hold the governors accountable to the governed.'"  Kuzma, 2014 WL 4829315, at * 2 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999); Phillips, 385 F. Supp. at 301 ("FOIA reflects a strong Congressional policy of requiring full public disclosure of documents and records maintained by federal agencies.").  "To that end, the FOIA requires the fullest possible public disclosure of government-kept records yet at the same time maintains the confidentiality of sensitive information based on narrowly tailored exemptions intended to protect certain interests."  Kuzma, 2014 WL 4829315, at * 2.

"Federal courts are required to conduct de novo review of an agency's decision to withhold requested records under the FOIA."  Kuzma, 2014 WL 4829315, at * 2 (citing Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993)).  "The preferred method of doing so is by summary judgment."  Kuzma, 2014 WL 4829315, at * 2 (citing Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); Jones-Edwards v. Appeal Bd. of NSA, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005)).

In a FOIA case, a plaintiff is entitled to summary judgment "when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption."  New York Times Co. v. U.S. Dep't of Defense, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007).  A federal agency is entitled to summary judgment "when it has thoroughly searched for responsive records and has articulated reasonably detailed explanations why any withheld documents fall within an exemption."  Kuzma, 2014 WL 4829315, at * 2 (citing Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); Wilner v. Nat'l Sec. Agency,

592 F.3d 60, 69 (2d Cir. 2009)).  "To carry its burden, the defending agency may rely on a *Vaughn* index, which consists of 'affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption.'"  Kuzma, 2014 WL 4829315, at * 2 (quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 481 (D.C. Cir. 1980); Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 291 (2d Cir. 1999) (citing Lesar).

The Vaughn index has three functions: "(1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and (3) it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court."  Kuzma, 2014 WL 4829315, at * 2 (quoting Halpern, 181 F.3d at 291; Keys v. United States Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987)). "Agency affidavits, including the *Vaughn* index, are presumed to have been made in good faith."  Kuzma, 2014 WL 4829315, at * 2 (citing Carney, 19 F.3d at 812).  "This presumption is not rebutted by bare allegations or speculative claims that additional documents exist."  Kuzma, 2014 WL 4829315, at * 2 (citing Grand Cent., 166 F.3d at 489).  "If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply."  Garcia v. United States Dep't of Justice, Office of Info. & Privacy, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002) (citing Carney, 19 F.3d at 812); Center for Constitutional Rights v. C.I.A., 765 F.3d 161, 166 (2d Cir. 2014).

## POINT I

## THE FBI IS ENTITLED TO SUMMARY JUDGMENT AS ITS SEARCH WAS ADEQUATE

In response to FOIA requests, federal agencies are obligated to conduct searches that are reasonably calculated to locate all responsive records. Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("Weisberg I"); Kennedy v. U.S. Department of Justice, 03-CV-6077, 2004 WL 2284691, at *2 (W.D.N.Y. 2004); Pub. Investors Arbitration Bar Ass'n v. U.S. Sec. & Exch. Comm'n, No. 11-2285, 2013 WL 987769 at *4 (D.D.C. Mar. 14, 2013). Under this reasonableness standard, an agency does not need to search every record system. Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system."). Nor is the adequacy of a search judged by its results. Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material[.]"); Mobley v. CIA, 924 F.Supp.2d 24, 36 (D.D.C. 2013). Rather, an agency's search is measured against a standard of reasonableness applied to the specific FOIA request, i.e., did the agency search all places where responsive records were reasonably likely to be found. Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("Weisberg II"); Scaff-Martinez v. DEA, 770 F. Supp. 2d 17, 21-22 (D.D.C. 2011). Accordingly, an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).

To justify its search for purposes of summary judgment, an agency needs only to provide affidavits explaining the scope and method of the search in reasonable detail. Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."). Those agency affidavits are entitled to a presumption of good faith. SafeCard Servs., Inc., v. Sec. Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991); Mobley, 2013 WL 452932 at *33 ("The only situation in which the Court would withhold a presumption of good faith as to a sworn agency declaration is if the plaintiffs were able to present contrary evidence of bad faith."). Once the agency has shown "that it conducted 'reasonably calculated' searches, the burden is on [plaintiff] to identify specific additional places the agency should now search." Hodge v. FBI, 703 F.3d 575, 580 (D.C. Cir. 2013). In short, where affidavits establish that an agency's FOIA search was reasonably calculated to find all responsive records, the agency has satisfied its obligation to conduct an adequate search. Perry, 684 F.2d at 127; Cooper v. Stewart, 763 F. Supp. 2d 137, 141-42 (D.D.C. 2011), aff'd, 2011 WL 6758484 (D.C.Cir. Dec 15, 2011); see also Fed. R. Civ. P. 56(c).

Here, as stated in the accompanying Seidel Declaration, the FBI searched its "main" files and, at the request of Plaintiff, its "reference" files. Seidel Dec. ¶ 30. In conducting its search, the FBI conducted an index search for potentially responsive records through its electronic systems, as well as the manual indices of FBI headquarters and the following FBI field offices: San Antonio, Dallas, Houston, Oklahoma City, Cleveland, New Orleans, Detroit, Portland, and Los Angeles. The FBI employed the following search terms: "Scott Crow," "James Haws," "Hooks," and "Tackhead." As a result of these search efforts, FBI

located 773 pages of responsive records that are subject to the FOIA.  Seidel Dec. ¶¶ 31-32. The FBI's search was adequate for three reasons.   First, given its comprehensive nature and scope, the FBI's Central Records System ("CRS") is the principal records system searched by the FBI, to locate information responsive to most FOIA requests, as the CRS is where the FBI indexes information about individuals, organizations, and other subjects of investigative interest for future retrieval.  Seidel Dec. ¶ 33.   Second, the CRS is the FBI system where records responsive to this request would reasonably be found.  Given Plaintiff's request seeks information about an individual, Scott Crow, such information would reasonably be expected to be located in the CRS via the index search methodology.  Seidel Dec. ¶ 33.  Third, in this case, any responsive records within the Electronic Surveillance Indices ("ELSUR") would be duplicative of information available within the FBI's Sentinel indices, and the Automated Case Support ("ACS") indices available in Sentinel; thus, a search of the Sentinel indices and ACS indices available in Sentinel also accomplished the task of locating any responsive records in ELSUR via the same index search terms.  Seidel Dec. ¶ 33.  In addition to the foregoing, Plaintiff specifically requested that the FBI search other systems for responsive documents, including microphone surveillance ("MISUR"), physical surveillance ("FISUR"), laboratory records, and FBI's "Bureau Mailing List" records system.  Seidel Dec. ¶ 34.   Given the nature of Plaintiff's request seeking records on Scott Crow (a subject reasonably expected to be indexed within the automated indices available in ACS and Sentinel), and the comprehensive nature of the information contained in the CRS, the CRS is the only FBI system of records where responsive records could reasonably be expected to be found.  Seidel Dec. ¶ 34.  As applicable here, Plaintiff provided no information for the FBI to reasonably conclude records would reside outside of the CRS.  Seidel Dec. ¶ 34.

6

In sum, the FBI's search for responsive records was comprehensive, reasonably calculated to locate responsive documents, and did, in fact, result in the processing of a total of 773 pages of responsive records subject to the FOIA. Of these pages, the FBI released 49 pages in full, released 280 pages in part, and withheld 444 pages in full for the following reasons: 356 pages were exempt in full pursuant to one or more applicable FOIA Exemption(s); 76 pages were found to be duplicative of other pages accounted for elsewhere in the FBI's production; and 12 pages are sealed pursuant to United States Court order, and unavailable for release through the FOIA. Seidel Declaration ¶ 4. Therefore, defendant DOJ is entitled to summary judgment as to the adequacy of its search.

## POINT II

### FBI'S FOIA RESPONSE WAS PROPER AND PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

FOIA generally requires disclosure of government records unless the requested information falls within an enumerated FOIA exemption. 5 U.S.C. § 552(b). Notwithstanding the FOIA's "liberal congressional purpose," the statutory exemptions must be given "meaningful reach and application." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). "Requiring an agency to disclose exempt information is not authorized." Minier v. CIA, 88 F.3d 796, 803 (9th Cir. 1996) (quoting Spurlock v. FBI, 69 F.3d 1010, 1016 (9th Cir. 1995)). Agency decisions to withhold information under the FOIA are reviewed de novo, and the agency bears the burden of proving its claim for exemption. 5 U.S.C. § 552(a)(4)(B); Kennedy, 2004 WL 2284691, at * 2; A. Michael's Piano. Inc. v. FTC, 18 F.3d 138, 143 (2d Cir. 1994).

A.    **Segregability**

FOIA requires that government agencies disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "Non-exempt portions of a record may be withheld only if they are 'inextricably intertwined' with the exempt portions." Kuzma, 2014 WL 4829315, at * 5 (quoting Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys., 463 F.3d 239, 249 n. 10 (2d Cir. 2006)). "If an agency determines that non-exempt portions of a record are not segregable, it must justify that determination in detail." Kuzma, 2014 WL 4829315, at * 5 (citing Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977)). "In this regard, an agency is entitled to a presumption that it complied with the FOIA's segregability requirements." Kuzma, 2014 WL 4829315, at * 5 (citing Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007)). "A district court 'must make specific findings of segregability regarding the documents to be withheld' before ruling that an asserted FOIA exemption is applicable." Kuzma, 2014 WL 4829315, at * 5 (quoting Sussman at 1116). (100)

Here, the FBI identified 773 responsive pages that are subject to the FOIA:  49 Released in Full ("RIF"), 280 Released in Part ("RIP"), and 444 Withheld in Full ("WIF"). Seidel Dec. ¶ 110.  Following its segregability review, FBI determined 49 pages could be released in full without redaction as there was no foreseeable harm to an interest protected by a FOIA exemption.  Seidel Dec. ¶ 110.  Following its segregability review, FBI determined 280 pages could be released in part with redactions per the identified FOIA exemptions herein. Seidel Dec. ¶ 110.  These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable

8

harm to one or more interests protected by the cited FOIA exemptions on these pages. Seidel Dec. ¶ 110. Following its segregability review, FBI determined 356 pages required withholding in their entirety. Seidel Dec. ¶ 110. FBI determined all information on these pages was either fully covered by one or more of the cited FOIA exemptions or determined that any non-exempt information on these pages was so intertwined with exempt material, no information could be reasonably segregated for release. Seidel Dec. ¶ 110. Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content.   Seidel Dec. ¶ 110. Additionally, the FBI withheld 12 pages because they were deemed to be sealed per United States Court order. Seidel Dec. ¶ 110. Also, the FBI withheld 76 pages because they were duplicates of pages accounted for elsewhere in the FBI's production. Seidel Dec. ¶ 110. It is the FBI's standard practice not to process duplicate pages, as doing so expends finite processing resources with a net result of no additional information being released to requesters. Seidel Dec. ¶ 110. Accordingly, the Court should find that defendant conducted an appropriate segregability review.

**B.**     **FBI's FOIA Response Was Proper Under FOIA Exemption 3**

FOIA Exemption 3, 5 U.S.C. § 552(b)(3), protects records that are "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In reviewing an agency's invocation of Exemption 3, "the Supreme Court [has] engaged in a two-prong review. First, is the statute in question a statute of exemption as contemplated by exemption 3? Second, does the withheld material satisfy the

criteria of the exemption statute?" <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 761-62 (D.C. Cir. 1990).

As the D.C. Circuit has explained, "'Exemption 3 differs from other FOIA exemptions in that

its applicability depends less on the detailed factual contents of specific documents; the sole

issue for decision is the existence of a relevant statute and the inclusion of withheld material

within the statute's coverage.'" <u>Fitzgibbon</u>, 911 F.2d at 761-62 (quoting <u>Ass'n of Retired R.R.

Workers v. U.S. R.R. Ret. Bd.</u>, 830 F.2d 331, 336 (D.C. Cir. 1987)).

As is relevant here, the following are statutes that are covered by Exemption 3: (i) the

Pen Register Act, 18 U.S.C. § 3123(d) (<u>Labow v. U. S. Dept. of Justice</u>, 831 F. 3d 523, 528

(D. C. Cir. 2016)); (ii) the Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038[1]; (iii) the

Bank Secrecy Act, 31 U.S.C., Section 5319 (<u>Ortiz v. United States Dep't of Justice</u>, 67 F.

Supp. 3d 109, 118 (D.D.C. 2014)); (iv) the National Security Act of 1947 ("NSA"), as

amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50

U.S.C. § 3024(i)(1) (<u>Wilner v. Nat'l Sec. Agency</u>, 592 F.3d 60, 72 (2d Cir. 2009); and (v) Title

III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520

(<u>Shapiro v. Dep't of Justice</u>, No. 12-CV-313 (BAH), 2020 WL 3615511, at *22 (D.D.C. July

2, 2020)).

Here, as it pertains to the Pen Register Act, the information withheld from disclosure

consists of the identities and phone numbers of the individuals targeted by the pen register

and/or individuals whose information was collected due to their contacting the target of the

---

[1] Undersigned counsel could not locate a case holding that this Act is covered by Exemption 3. However, FOIA Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue …." 5 U.S.C. § 552(b)(3). And, the Juvenile Justice and Delinquency Act provides, in pertinent part, that "[t]hroughout and upon the completion of the juvenile delinquency proceeding, the records shall be safeguarded from disclosure to unauthorized persons." 18 U.S.C. § 5038(a). Accordingly, the Act is clearly covered by Exemption 3.

pen register; and information gathered by the device. Seidel Dec. ¶¶ 40-41. Under the Juvenile Justice and Delinquency Act, the FBI withheld information pertaining to the arrest and adjudication of a juvenile's criminal acts. Seidel Dec. ¶ 42. Pursuant to the Bank Secrecy Act, the FBI withheld information obtained through the Bank Security Act during the course of its criminal investigative activities. Seidel Dec. ¶¶ 43-46. As it concerns the National Security Act, the FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiff. Seidel Dec. ¶¶ 47-50. Lastly, the FBI withheld information under Title III that consists of the identities of the individuals targeted for interception through wiretap, and information obtained via the Title III wiretap. Seidel Dec. ¶¶ 51-52.

In sum, the Court should find that defendant properly invoked Exemption 3.

**C.    The FBI's FOIA Response Was Proper Under FOIA Exemptions 6 and 7(C)**

FOIA Exemption 6, 5 U.S.C. § 552(b)(6), permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy." The Supreme Court, in U.S. Dept. of State v. Washington Post Co., 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), held that all information that "applies to a particular individual" satisfies the requirements for protection under Exemption 6. Id. at 602. Thus, information that applies to any particular, identifiable individual comes within Exemption 6.

"The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" Reed v. National Labor Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991). FOIA Exemption 6

requires the courts to balance the right of the public to gain access to government records against the privacy right of individuals identified in those records. "The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." Dept. of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); FLRA v. United States Dep't of Veterans Affairs, 958 F.2d 503, 505 (2d Cir. 1992).

FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such [documents] ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." Where privacy interests are implicated and no public interest is served by the disclosure, Exemption 7(C) may be invoked. U.S. Dept. of Justice v. Reporters Committee For Freedom of Press, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). "[D]isclosure of records containing personal details about private citizens can infringe significant privacy interests." Reporter's Committee, 489 U.S. at 766.

Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United

12

States, and to conduct personnel investigations requisite to the work of the Department of Justice and whenever required by statute or otherwise.   Seidel Dec. ¶ 53. Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purpose: the records at issue concern Animal Rights, Eco-terrorism and/or Domestic terrorism crimes.  The investigative records and subsequent related FOIA records consist of or reference investigative information compiled during multiple FBI criminal investigations of threats made against organizations and/or investigations of third parties involved in these crimes.  Seidel Dec. ¶ 54.  Thus, these records were compiled and/or related to records compiled for a law enforcement purpose; they squarely fall within the law enforcement duties of the FBI; therefore, the information readily meets the threshold requirement of Exemption (b)(7).

When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue.   When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure.  For purposes of these exemptions, a public interest exists only when information about an individual would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.  In each instance where information was withheld pursuant to Exemptions 6

and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure. Seidel Dec., ¶¶ 57-63. Accordingly, the Court should find that the FBI's designation of these exemptions was proper.

**D.    FBI's FOIA Response Was Proper Under FOIA Exemption 7(D)**

FOIA Exemption 7(D) exempts from disclosure:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). Where the requested records concern a criminal investigation conducted by the FBI, the second clause of Exemption 7(D) applies. Ferguson v. F.B.I., 957 F.2d 1059, 1069 (2d Cir. 1992). Thus all information furnished by a "confidential source" may be withheld. Id. ("Once it is shown that information was provided by a confidential source, the information itself is protected from disclosure...."). Under Exemption 7(D), "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." United States Dep't of Justice v. Landano, 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Exemption 7(D) ensures that confidential sources are protected in order to prevent harm to them and loss of a source of information. United Techs. v. NLRB, 777 F.2d 90, 94 (2d Cir.1985). A source is deemed confidential if he "provided information under an express assurance of confidentiality or in

14

circumstances from which such an assurance could be reasonably inferred." Landano, 508 U.S. at 172, 113 S.Ct. 2014 (citation and internal quotation marks omitted).

Numerous confidential sources report to the FBI on a regular basis and are "informants" within the common meaning of the term. Some of these sources provide information under an express assurance of confidentiality. Other individuals are interviewed under circumstances from which assurances of confidentiality can reasonably be implied or inferred. These individuals are considered to be confidential sources since they furnished information only with the understanding that their identities and the information provided will not be released outside the FBI. Information provided by these individuals is singular in nature, and if released, could reveal their identities. Seidel Dec., ¶¶ 65-66.

Exemption (b)(7)(D), in conjunction with Exemptions (b)(6) and (b)(7)(C), to protect names, identifying information of, and information provided by individuals under an express assurance of confidentiality, confidential source symbol numbers, confidential source file numbers, information provided by source numbered informants, and foreign government information under implied confidentiality. Seidel Dec. ¶¶ 67-76. Accordingly, this Court should find that the FBI's assertion of Exemption 7(D) was appropriate.

**E.     FBI's FOIA Response Was Proper Under FOIA Exemption 7(E)**

Exemption 7(E) protects "records or information compiled for law enforcement purposes," that, if disclosed, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

15

The FBI asserted FOIA Exemption 7(E) to withhold information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  Seidel Dec. ¶ 78.  Within the responsive documents, the FBI applied Exemption 7(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public.  Specifically, the FBI asserted Exemption 7(E) to protect the following categories of information.   Seidel Dec. ¶ 79. Specifically, here, the FBI protected the identity and/or location of the FBI or Joint Units, Squads, and Divisions, sensitive file numbers and sub-file names, investigative focus of a specific investigation, information regarding target, date, and scope of surveillance, collection and analysis of information, targets of pen registers/trap and trace devices, tactical information contained in operational plans, database information and search results, monetary payments for investigative techniques, internal FBI secure intranet/web addresses and phones numbers, and types and timing of investigations.  Seidel Dec. ¶¶ 80-102.  For the reasons stated in the Seidel Declaration, the Court should find that Exemption 7(E) was properly asserted.

## CONCLUSION

Defendant DOJ's motion for summary judgment should be granted and plaintiff's complaint should be dismissed in its entirety with prejudice.

DATED:  Buffalo, New York, November 30, 2020

JAMES P. KENNEDY, JR.
United States Attorney


*S/Michael S. Cerrone*

BY:   MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov

17